## JAMES HARRIS Executor of BENTON HARRIS *vs.* NATHAN VICKERS.

Indebitatus assumpsit will not lie by the administrator of tenant for life for an apportionment of the rent. Plff. must declare *specially*.

CAPIAS case for use and occupation. Plea non assumpsit. Issue. *Layton* for plff. exhibited the letters testamentary and proved

the leasing by testator to deft. at $100 per year, from January to January. B. Harris died in June 1830.

He here rested, when

*Cullen* for deft. moved a nonsuit. Rent follows the reversion. If lessee die before rent due, the rent goes to the heir with the inheritance. *Toller Ex.* 177. The proof shows that Benton Harris was the owner of this property; on his death it descended to the heir; the heir, therefore, and not the ex'r., is entitled to the rent. The action is assumpsit for use and occupation, to recover a reasonable sum for the occupation of the house of plff. But when the rent fell due, the house belonged to the heir of Benton Harris, and not to plff. his personal representative.

*Layton.* Benton Harris was tenant for life, and the suit is to recover that portion of the rent which fell due in his life time. We go for an apportionment.

*By the Court.* CLAYTON, C. J.—If Benton Harris were tenant for life, his ex'r. could not maintain a general indebitatus assumpsit for an apportionment. He must count in a special action on the case under the act of assembly. It was so decided in the case of Joseph Parsons, adm'r. *vs.* Allee, in Kent, at the Nov. Term, 1831. (*a*).

On the other point, we are of opinion that an ex'r. cannot recover accruing rents after the death of the testator; and, therefore, there must be a

Judgment of nonsuit.

———◆———

EBE WALTER, Adm'r. of PEMBERTON BURTON *vs.* JAMES F. MILLER and NANCY DERRICKSON.

Trover will lie against an administrator personally for a conversion by him, though the property came to him with the estate of his intestate.

CAPIAS Trover. Pleas, Not guilty, and Act of limitations. Issues. This was an action of trover brought for four negro slaves. The

(*a*) "Joseph Parsons, being tenant for life, in his lifetime, let to Abraham Allee a tract of land by parol, from year to year, rendering rent one-third of the corn, and two-fifths of the wheat. The letting was from the 1st of March. Parsons died on the 20th of October. To recover under the Stat. 11 *Geo.* 2 *Ch.* 19., a proportion of the rent the adm'r. after the expiration of the year, brought his action, and filed his narr in general indebitatus assumpsit alledging that Allee was indebted to Parsons in his lifetime for the use and occupation of the premises for a long time then elapsed, in consideration whereof, he promised to pay the said Parsons in his lifetime, &c. It was objected that general indebitatus assumpsit will not lie. Second, that it should have been alledged that deft. being liable to the ex'r., undertook and promised to pay him as ex'r. Accruing rent being neither *debitum* nor *solvendum*, a release of all actions does not release such rent. *Litt. Sect.* 513; *Co. Litt* 292-6. There being no debt or duty at the death of Parsons, it would seem that in an action brought by his adm'r. after his death the declaration ought to have stated the facts specially, to wit: the use and occupation by permission of Parsons in his life time; the death of

first count laid the property in P. Burton, and the conversion in his life time. The second count laid the property in Burton, and the conversion by defts. since his death; and the third count laid the property in the adm'r. Walter, and the conversion since the death of Burton.

The proof established that Pemberton Burton married the daughter of Capt. Wm. Derrickson, who gave these negroes to the wife of Burton. The negroes went into the possession of Burton and remained in his possession after the death of his wife and during all his life. After his death, they were taken back by Capt. Derrickson. Defts. are his adm'rs. and have refused on the application of plff. to give them up; but have sold them as a part of the estate of Derrickson.

On this evidence, *Cullen* for defts. moved for a nonsuit. The declaration in all the counts states the conversion by defts. The proof establishes a conversion by Capt. Derrickson in his lifetime. Can the action be sustained? It is a tort—dies with the wrong-doer. The defts. found the property in the possession of their intestate, and appraised it as such. Can they be made liable as wrong-doers for this? The plff. has his remedy in another form of action for money had and received, to recover the value. Trover does not lie against an ex'r. for a conversion in the testator's lifetime. 1 *Cowp.* 371.

We admit that the cause of action survives under our act of Assembly, but the conversion is here charged upon the defts. and not a conversion by the testator. The plffs. might bring an action for the conversion by the intestate, and a recovery here could not be a bar to that action. *Saund. Ev.* 886, 855.

*Frame* for plff. We have not charged a trover and conversion by Derrickson, and we did not mean to do it. Every man is answerable for his own torts, and we mean to make these defts. answerable for their tort. We care not whether they be adm'rs. or not, they are wrong-doers, and we hold them answerable for the tort individually. We do not charge them as adm'rs., but personally; and the fact of their being the adm'rs. of a man who has committed a tort, shall not excuse their own tort. The case in *Cowper* is very different. The question there, was whether the adm'r. could be held answerable for the torts of his intestate, and we recognize the law of that case, at least until our act of Assembly altered it, and prevented the abatement of the action. But there is in this case, not only a constructive, but an actual conversion. It is the law that if a person gets possession of the property of another, and uses it not only as his own, but as the property of another, it is a conversion. 2 *Saund. Pl. and Ev.* 881.

Parsons; the legal liability of the tenant to pay to the adm'r., and his undertaking to pay.

(See form of declaration for ex'rs. Rent due from deft. 25th March, 1789, to 25th June, 1789. The testator died in the middle of the quarter. In a suit by ex'r. of a termor for rent which became due after the death of the testator, &c." *Impeys. Plead.* 360; 1 *Chitty Pl.* 11, 38-9.)